UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **Ezell Roberts, Doc ID # 1218077,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. _____ |
| **Keith Overton** | ) |
| and | ) |
| **Ashley Wells,** | ) |
| **Defendants.** | ) |

## COMPLAINT

Plaintiff Ezell Roberts, Doc ID # 1218077 ("Plaintiff"), for his causes of action against Defendants Keith Overton and Ashley Wells ("Defendants"), alleges as follows:

### NATURE OF THE CASE

1. In this civil rights action, brought pursuant to 42 U.S.C. § 1983, Plaintiff seeks both compensatory and punitive damages against Defendants for maliciously and sadistically torturing him without any penological purpose at Southeast Hospital in Cape Girardeau, Missouri while Plaintiff was in recovery from, and within days after Plaintiff underwent, triple-bypass surgery. Defendants' actions violated Plaintiff's Eighth Amendment Constitutional Rights and intentionally inflicted emotional distress on him under Missouri state law.

### PARTIES, JURISDICTION AND VENUE

2. Plaintiff is an individual currently incarcerated at Southeast Correctional Center ("SECC") located at 300 East Pedro Simmons Drive, Charleston, Missouri 63834

1

3. Defendant Keith Overton is or was at all relevant times employed as a correctional officer at SECC. Defendant's conduct herein alleged was under color of state law and he is being sued in his individual capacity.

4. Defendant Ashley Wells is or was at all relevant times employed as a correctional officer at SECC. Defendant's conduct herein alleged was under color of state law and she is being sued in her individual capacity.

5. This Court has jurisdiction under the provisions of 28 U.S.C. §§ 1331, 1343 because Plaintiff's action arises under a federal statute, namely 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution. Supplemental jurisdiction over Plaintiff's state law claims is proper in this Court under 28 U.S.C. § 1367(a).

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) as the claims set forth in this Complaint arose in this district and the Defendants reside in this district.

7. Plaintiff has extinguished all his administrative remedies. Plaintiff filed an Informal Resolution Request but his complaint was referred to the Eastern Investigative Unit and was told he would receive no further answer. Plaintiff also filed a grievance. Plaintiff never received a response to that grievance.

**FACTUAL BACKGROUND**

8. On Friday, December 18, 2015, while incarcerated at SECC and living in the honor dorm, Plaintiff experienced a heart attack while visiting with his mom and his two sisters during visiting hours.

9. After the heart attack, Plaintiff was first taken to the SECC infirmary.

10. After becoming stable at SECC's infirmary, SECC took Plaintiff to the Missouri Delta Medical Center in Sikeston, Missouri where they prepped him and then took him to Southeast Hospital in Cape Girardeau where they could perform more significant surgeries.

11. One guard accompanied him to Southeast Hospital in the ambulance.

12. While at Southeast Hospital and per Missouri Department of Corrections protocol, two correctional officers would oversee Plaintiff at all times.

13. Upon information and belief, there would be three different shifts per day where correctional officers would oversee Plaintiff, with two correctional officers working for eight hours per shift.

14. On December 21, 2015, while at Southeast Hospital, Plaintiff had triple bypass surgery.

15. On Christmas Day, December 25, 2015, Defendants came to watch over Plaintiff from approximately 4:00 p.m. until midnight.

16. Having triple bypass surgery, a few days before, Plaintiff could barely speak and could walk no more than 10-12 steps at a time, needing help doing so.

17. For nearly the entire time Defendants watched over Plaintiff, they tortured him.

18. Shortly after Defendants got there, Defendants turned up the heat in Plaintiff's room, making it uncomfortably hot and dangerous for Plaintiff as heart surgery causes hot flashes as the body's internal thermostat tries to regulate itself, and causing Plaintiff to sweat profusely. This humored Defendants.

19. After waking up from his afternoon nap, Plaintiff woke up to the room being uncomfortably hot.

20. One nurse came in twice and questioned why it was so hot in the room as she kept turning the air on. Little did the nurse know that Defendants kept turning the heat up when she left the room.

21. Defendants then turned off the nurse-call button, the bed adjustment button, the master control unit by the bed, and had the ability to change the position of the bed without Plaintiff's approval.

22. Further, when the Plaintiff woke up, he had learned that Defendants also trussed the Plaintiff's legs both together with shackles so tight he could not move either of his legs. Plaintiff's left leg was cut open as part of his surgery causing Plaintiff significant pain and potential harm to his health

23. Upon information and belief, this was against policy as Defendants were only supposed to do a three-point shackling and give Plaintiff some space between the chains and his body.

24. While shackled and unable to move his legs, Defendants then pressed the bed adjustment buttons to move the bed up and down to contort Plaintiff into painful, unnatural positions, causing Plaintiff significant physical pain. They nicknamed this tactic the "sofa." This was more amusement for Defendants as, upon information and belief, they would take pictures and videos of their torture and texted each other back and forth.

25. Upon information and belief based on a comment from Plaintiff's previous case worker, pictures and videos of the torture were not only taken by Defendants but may have been posted on the internet.

26. The "sofa" went on for nearly the entire time Defendants oversaw the Plaintiff.

27. The only time Defendants stopped torturing the Plaintiff was when someone entered the room.

28. At one point, a hospital employee entered the room and asked whether Plaintiff wanted his bed re-adjusted after Defendants put him in an uncomfortable position, and Plaintiff said yes.

29. Defendant Overton offered to help this employee and he picked Plaintiff up and aggressively and unnecessarily threw him against the headboard, causing the Plaintiff serious confusion as if he saw stars.

30. The hospital employee remarked that Defendant Overton did not need to throw the Plaintiff that hard.

31. After the hospital employee left the room, Defendant Overton grabbed an electrical cord in the room and stood behind Plaintiff and threatened to, and acted as if he was going to, choke Plaintiff.

32. Defendant Wells also moved Plaintiff's urine bottle out of his reach forcing him to hold his urine.

33. The nurse had to move the bottle back within his reach when she came back to the room so he could relieve himself.

34. While torturing Plaintiff, Defendants would use racial slurs like "n***er," said black people were all "sluts," and bragged about their torturing skills.

35. At one point, Defendant Overton remarked how good Defendant Wells was at torturing the Plaintiff.

36. Defendant Wells told Defendant Overton that she knows how to torture someone better than anyone.

37. Upon information and belief, another correctional officer who was overseeing another prisoner on another floor tried coming down to visit a couple times but one of the Defendants stopped him out in front of the door so he could not witness what they were doing to Plaintiff.

38. That night and after nearly eight hours of torture, Correctional Officers Johnson and Gillespie relieved Defendants' shift only to enter Plaintiff's room earlier than expected and knew something was amiss. Defendants were upset that the two correctional officers came early.

39. Correctional Officer Gillespie immediately went out to talk to Defendants about what had gone on during their shift while Correctional Officer Johnson sat there with the Plaintiff.

40. Correctional Officer Johnson must have realized what had happened as he apologized about what Plaintiff had to endure and to him he should not have had to go through that kind of treatment. Correctional Officer Johnson said he did not deserve what happened to him as he has always been a well-behaved prisoner who never treated anyone badly.

41. The next day, Plaintiff was sent back to SECC.

42. Since returning to SECC, Plaintiff routinely wakes up in the middle of the night, distraught and screaming, often times waking up the Plaintiff's cellmate.

43. Even when going back to the infirmary after leaving Southeast Hospital, Plaintiff requested to go back to his cell because he was afraid of what could happen at the infirmary and could not sleep.

44. The Plaintiff has not been the same person since the torture.

45. As a proximate result of the aforementioned acts of Defendants, Plaintiff has suffered and continues to suffer from personal injuries, including but not limited to physical pain, fear, inability to sleep, physical and emotional pain, torment, degradation, humiliation, anguish, anxiety, embarrassment, and emotional distress, resulting in some permanent impairment, disability and damage and claims general damages for such physical and mental pain.

46. The conduct of Defendants, as described herein, was intentional, malicious, unprivileged, despicable, outrageous, and so vile, base, contemptible, criminal, miserable,

wretched, and loathsome that it is looked down upon and despised by ordinary decent people, and this conduct was directed at Plaintiff by Defendants with the intent that it would harm Plaintiff and cause Plaintiff to suffer severe emotional distress and/or with reckless disregard of the probability of causing Plaintiff to suffer severe emotional distress; Defendants knew that Plaintiff was peculiarly susceptible to extreme emotional distress because of his position of helplessness; Defendants were in a special relationship with Plaintiff because they were in a position of power to take advantage of Plaintiff, as they did, increasing the extreme emotional distress inflicted upon Plaintiff.

## CAUSES OF ACTION

### COUNT I

*CRUEL AND UNUSUAL PUNISHMENT – 42 U.S.C. § 1983*

47. Plaintiff incorporates by reference his previous allegations as if fully set forth herein.

48. The Eighth Amendment of the United States Constitution guarantees all person the right to be free from cruel and unusual punishment. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

49. At all relevant times, Plaintiff was serving a sentence at SECC as a result of a criminal conviction.

50. Defendants inflicted cruel and unusual punishment on Plaintiff by torturing Plaintiff for eight hours. This conduct caused significant physical pain to Plaintiff and has caused him continuing nightmares and lives in constant fear.

51. Defendants acted under color of state law.

52. Defendants are liable to Plaintiff for their cruel and unusual punishment that served no legitimate penological purpose.

53. As a proximate cause of the evil, willful, wanton, malicious, sadistic conduct of Defendants, Plaintiff suffered excruciating pain and emotional distress. Plaintiff is informed and believes, and upon such information and belief, alleges that this emotional injury will continue into the future. As a further proximate result of the aforementioned conduct, Plaintiff will require the services of medical and psychological professionals for treatment.

WHEREFORE, Plaintiff prays this Court to enter Judgment on its behalf for compensatory damages that will fairly compensate him for the harm due to this violation, for his attorneys' fees and costs herein expended, for an additional award of punitive damages, and for such other and further relief as the Court deems just and proper.

## COUNT II

*INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – MISSOURI STATE LAW*

54. Plaintiff incorporates his previous allegations as if fully set forth herein.

55. Defendants conduct in torturing Plaintiff was extreme and outrageous and surpassed the bounds of decency which is utterly intolerable in a civilized community.

56. Defendants acted intentionally.

57. Plaintiff has suffered severe emotional distress that resulted in bodily harm.

58. As a proximate cause of the evil, willful, wanton, malicious, sadistic conduct of Defendants, Plaintiff suffered excruciating pain and emotional distress. Plaintiff is informed and believes, and upon such information and belief, alleges that this emotional injury will continue into the future. As a further proximate result of the aforementioned conduct, Plaintiff has and will require the services of medical and psychological professionals for treatment.

WHEREFORE, Plaintiff prays this Court to enter Judgment on his behalf for damages that will fairly compensate him for the torture he has endured; for his attorneys' fees and costs herein expended; for an additional award of punitive damages; and for such other and further

relief as the Court deems just and proper.

## COUNT III

*NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – MISSOURI STATE LAW*

59. Plaintiff incorporates his previous allegations as if fully set forth herein.

60. The Defendants negligently inflicted emotional distress on Plaintiff.

61. As a direct result of Defendants' conduct, Plaintiff suffered an emotional injury and will need continued medical and psychological treatment.

WHEREFORE, Plaintiff prays this Court to enter Judgment for reasonable damages and other relief as is just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests this Court:

(A) Enter judgment in favor of Plaintiff and against Defendants;

(B) Award Plaintiff compensatory and punitive damages against Defendants for their violation of Plaintiff's constitutional rights under color of state law;

(C) Award Plaintiff compensatory and punitive damages against Defendants for their intentional infliction of emotional distress under state law;

(D) Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provision of law; and

(E) Allow such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial of all claims and issues so triable.

Respectfully submitted,

**FOSTER WALLACE, LLC**

By: /s/ *Michael S. Foster*

    Michael S. Foster (MO #61205)
    1501 Westport Road
    Kansas City, MO 64111
    816.249.2101
    Fax No: 816.249.2170
    michael@fosterwallace.com

**OSBURN, HINE & YATES, L.L.C.**

By: /s/ Jeffrey P. Hine
    Jeffrey P. Hine, #34026
    3071 Lexington Avenue
    Cape Girardeau, MO 63701
    Telephone: 573-651-9000
    Facsimile: 573-651-9090
    Email: jhine@ohylaw.com

ATTORNEYS FOR PLAINTIFF EZELL ROBERTS